# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

**CLAUDE C. LIGHTFOOT, JR., et al**                    **CIVIL ACTION**

**VERSUS**                                             **NO:  05-3776-PB-SS**

**MISS LOU PROPERTIES, INC., et al**

## REPORT AND RECOMMENDATION

For the reasons described below, it is recommended that the motion of the plaintiff, Claude

C. Lightfoot, Jr. ("Receiver"), for summary judgment be granted.

## BACKGROUND

The Federal Trade Commission ("FTC") filed its complaint on April 19, 1989 against

National Business Consultants, Inc. ("National Business Consultants") and Robert Namer ("Namer")

in CA No. 89-1740.

At the time, Namer and NBC were engaged in the nation-wide sale of business
franchises.  The FTC alleged that Namer and NBC made numerous material
misrepresentations to potential franchisees, made unsupported earnings claims, failed
to provide required supporting documentation, and failed to make required
disclosures.  The FTC sought injunctive and monetary relief to redress the losses
suffered by defrauded franchisees.  Following a bench trial on the issue of liability,
the district court found in favor of the FTC.  In November 1991, the district court
entered a judgment rendering Namer and NBC jointly and severally liable to the FTC
for three million dollars, which represented the relief and damages awarded for

consumer redress.

FTC v. National Business Consultants, Inc., 376 F.3d 317, 318-19 (5th Cir. 2004), cert. den. 544 U.S. 904, 125 S.Ct. 1590 (2005).

On January 27, 2003, and in response to a judgment debtor examination, the District Judge determined that:  (1) Namer had made use of Voice of America, Inc. ("VOA"), Namer, Inc., America First Communications, Inc. ("AFC") and Friends of Robert Namer for the calculated purpose of frustrating the FTC's enforcement of the judgment; and (2) Namer violated the Federal Debt Collection Procedure Act ("FDCPA"), 28 U.S.C.A. §§ 3001-3308, by transferring income and assets to these entities.  On April 8, 2003, the judgment was amended to add VOA, Namer, Inc., AFC and Friends of Robert Namer as judgment debtors.  Rec. doc. 851 in 89-1740.  The Fifth Circuit affirmed and found that:  (1) the FDCPA was applicable because the unpaid judgment owed to the FTC constitutes a debt owing to the United States; (2) there was no abuse of discretion in the exercise of the District Court's authority to join additional defendants; and (3) the record supported the finding that Namer engaged in the transfer of income and assets calculated to hinder, delay, and avoid collection of the judgment against him in violation of the FDCPA.  376 F.3d at 319-322.  The Supreme Court denied writs on March 7, 2005.  125 S.Ct. at 1590.  On December 10, 2004, the FTC filed an application for writ of continuing garnishment to Copytek-Tronics, Inc. ("Copytek").  Rec. doc. 860 in 89-1740.

On February 15, 2005, AFC assigned to Miss Lou Properties, Inc. ("Miss Lou Properties") its interest in more than eleven acres in St. Tammany Parish for $48,000 in cash and assumption of AFC's note payable to Sarah Brownlee for $48,000 and its note payable to Herman J. Lombas, Jr.

for $100,000.  Exhibit J to Rec. doc. 38.  Ben Walker signed the act as the manager of Miss Lou Properties, Raymond Hoffman signed as vice president of AFC, and Mrs. Brownlee and Mr. Lombas signed as witnesses.  Id.  Miss Lou Properties issued two new notes in favor of Mrs. Brownlee and Mr. Lombas in the same amounts as the original notes owed by AFC.  Miss Lou Properties mortgaged the property to secure the debt to Mrs. Brownlee and Mr. Lombas.  Id.  It also entered into a commercial lease of the property to AFC for a term of five years.  Exhibit O to Rec. doc. 38.

On May 31, 2005, the FTC filed a motion for the appointment of a receiver for VOA, AFC and Namer, Inc.  Rec. doc. 894 in 89-1740.  The motion was granted by the District Court and Claude Lightfoot ("Receiver") was appointed as the receiver.  Rec. doc. 895 in 89-1740.

On August 12, 2005, the Receiver filed a complaint against Miss Lou Properties and Malise Prieto, in her capacity as ex-officio Recorder of Mortgages and Registrar of Conveyances for St. Tammany Parish, State of Louisiana ("Recorder of Mortgages").  Rec. doc. 1.  The complaint was amended to add Mrs. Brownlee and Mr. Lombas as defendants.  Rec. doc. 13.  The Receiver contends that AFC, acting through Namer, and Miss Lou Properties violated the FDCPA by transferring real property from AFC to Miss Lou Properties as a result of which the following are null: the act of sale and assumption; the mortgages granted in favor of Mrs. Brownlee and Mr. Lombas; and a commercial lease from Miss Lou Properties to AFC.

FTC'S FAILURE TO RECORD JUDGMENT

Prior to the decision to add AFC as a judgment creditor, Namer operated radio station WASO-AM through AFC.  AFC owned a license issued by the Federal Communications

3

Commission and eleven acres in St. Tammany Parish on which was located a 250 foot transmission tower and a building containing radio equipment.  Rec. doc. 1081 at 89-1740.  Namer, Inc. owned a two story office building on Kingman Street, part of which was used by the radio station.  Rec. doc. 1002 in 89-1740.  The FTC recorded its judgment against AFC and the other debtors in Jefferson Parish but not in St. Tammany Parish.  Ben Walker testified that Namer approached him about buying both the Kingman Street property and the St. Tammany Parish property.[1]  Walker at pp. 38-42.  His abstractor checked the public records and found the lien against the Kingman Street property but no lien was recorded against the St. Tammany Parish property.  Id. at p. 43.  Walker testified that had a lien been filed he would not have purchased it.  Id. at p. 44.

The FTC has not offered any explanation for its failure to record the judgment in St. Tammany Parish.  This prompts the question of whether the FTC was negligent in failing to do so. If this matter was purely between private litigants, the court would be compelled to consider the issue of whether the FTC is equitably stopped from pursuing this action but it is not.  The FTC is attempting recover funds owed to the victims of the material misrepresentations made by Namer and National Business Consultants.  Prior to January 27, 2003, Namer acted for the calculated purpose of frustrating the FTC's enforcement of the judgment and thereby violated the FDCPA by transferring income and assets to VOA, Namer, Inc, AFC and Friends of Robert Namer.  376 F.3d at 321-22.  If Namer has again violated the FDCPA, it would be a miscarriage of justice to penalize

---

[1] Ben Walker was deposed on December 21, 2005.  The transcript is Exhibit L to Rec. doc. 38.  The transcript is referred to as Walker at p. _____.

the victims because of the FTC's failure to act.[2]

SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56 provides in pertinent part that summary judgment will be granted when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).   Lujan v. National Wildlife Federation, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189 (1990). To that end, the court must "view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.  Wyatt v. Hunt Plywood, 297 F.3d 405, 409 (5th Cir. 2002).  Where the record taken as whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986);  Washington v. Allstate Ins. Co., 901 F.2d 1281 (5th Cir. 1990).

Furthermore, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.  Celotex, 106 S.Ct. at 2553;  see Lujan, 110 S. Ct. at 3187.  If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response.  If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.  Celotex, 106 S.Ct. at 2553-54.  A dispute over a

---

[2] If the Receiver and his counsel seek authorization to recover fees and expenses for this litigation, they or the FTC shall first explain why the FTC did not record the judgment in St. Tammany Parish.

material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Kee v. City of Rowlett Texas, 247 F.3d 206, 210 (5th Cir. 2001).

This burden is not satisfied with "some metaphysical doubt as to the material facts," Matsushita, 106 S.Ct. at 1356, by "conclusory allegations," Lujan, 110 S. Ct. at 3180, by "unsubstantiated assertions," Hopper v. Frank, 16 F.3d 92 (5th Cir.1994), or by only a "scintilla" of evidence, Davis v. Chevron U.S.A., Inc., 14 F.3d 1082 (5th Cir.1994).  The court resolves factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.  The court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. See Lujan, 110 S. Ct. at 3188.   Summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir.1993).  If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted.  See Evans v. City of Bishop, 238 F.3d 586, 588-89 (5th Cir. 2000).

FDCPA

A transfer can be considered fraudulent according to three separate provisions of the FDCPA:  § 3304(a)(1); § 3304(a)(2); and § 3304 (b)(1)(A).[3]

---

[3]  A transfer is fraudulent under 28 U.S.C. § 3304(b)(B), if the debtor makes the transfer without receiving a reasonably equivalent value in exchange for the transfer, and either:  (a) the debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due; or (b) the debtor was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.  These have no application to the issues presented by the Receiver's motion for summary judgment.

6

1.  Fraudulent Transfer Under § 3304(a)(1).

>       In order to prevail under § 3304(a)(1), the USA must prove (1) that the debt
> arose before the transfer; (2) that the transfer was made without receiving reasonably
> equivalent value in exchange; and (3) the debtor was insolvent at the time of the
> transfer or the debtor became insolvent as a result of the transfer.

In re:  Phillips and Hornsby Litigation, 306 F.Supp.2d 631, 635 (M.D.La. 2004).  The court also

stated that,

>       [C]laims brought under subsection (a) have no intent requirement.  Rather, fraudulent
> intent or lack of reasonableness is supposedly presumed when the transferor's debt
> (to the United States) arose prior to the time he transferred his assets.

Id. at 636.

2.  Fraudulent Transfer Under § 3304(a)(2).

In order to prevail under this provision, the Receiver must prove that:  (1) the debt arose

before the transfer; (2) the transfer was made to an insider for an antecedent debt; (3) the debtor was

insolvent at the time; and (4) the insider has reasonable cause to believe that the debtor was

insolvent.  Again, because this provision falls under subsection (a), it is unnecessary to consider the

issue of intent.  306 F.Supp.2d at 636.

3.  Fraudulent Transfer Under § 3304(b)(1)(A).

Under this provision a transfer is fraudulent, regardless of whether the debt to the United

States "arises before or after the transfer . . ., if the debtor makes the transfer . . . with actual intent

to hinder, delay, or defraud a creditor. . . ."  28 U.S.C. § 3304(b)(1)(A).  The FDCPA provides a list

of factors, for example whether the transfer was made to an insider, that may be considered in

determining whether actual intent is present.  28 U.S.C. § 3304(b)(2).

FRAUDULENT TRANSFER UNDER § 3304(a)(1)

It is undisputed that the judgment for the payment of more than $3 million remains unsatisfied.[4]  It is undisputed that on February 15, 2005 there was a closing at which AFC transferred the land in St. Tammany Parish to Miss Lou Properties.  AFC's debt to the FTC was an obligation owed to the United States.  376 F.3d at 320.  The debt arose prior to its transfer of the land to Miss Lou Properties.  Therefore, the undisputed facts satisfy the requirement that the debt arose prior to the transfer.

The next requirement for a fraudulent transfer under 28 U.S.C. § 3304(a)(1) is whether the transfer was made without receiving reasonably equivalent value in exchange.  The Receiver contends that AFC received inadequate consideration.  Instead of receiving $200,000 cash, it received $48,000.  The Receiver contends that only Mrs. Brownlee and Mr. Lombas benefitted from the assumption of AFC's obligations to them.  The defendants (other than the Recorder of Mortgages) contend that the transfer enhanced AFC's financial position.

The court must view the facts and the inferences to be drawn therefrom in the light most favorable to the defendants.  The defendants describe the statements of Mrs. Brownlee, who is 85, in her deposition as incoherent.  Rec. doc. 44 at p. 4.  In order to determine the origin of AFC's obligations to Mrs. Brownlee and Mr. Lombas, the court must rely on the latter's deposition.[5]

In 1992 Mr. Lombas was a regular listener to Keith Rush, who was heard on an AM radio

---

[4]  Namer's contention that the judgment was satisfied is wholly without merit.  See order of August 24, 2005 denying Namer's motion to dismiss on the basis of accord and satisfaction.  Rec. doc. 1009 in 89-1740.

[5]  The transcript of Mr. Lombas' deposition on January 11, 2006 is Exhibit H to Rec. doc. 44.  Hereafter it is referred to as "Lombas at p. __."

station with Ron Hunter and Robert Namer.  Lombas at p. 15-16.  There was a problem with the station, and the three invited their listeners to attend a meeting at a hotel to determine if something could be done to continue their programming.  Id. at p. 16.  Namer conducted the meeting and sought to determine how many persons in attendance were interested in trying to keep the three on the air.  Id. at pp. 18-19.  Mr. Lombas and others signed up.  Id. at 19.  There was a further meeting at the Kingman Street building for these persons.  Id. at 21.  At that meeting Namer determined who wanted to invest in a radio station.  Mr. Lombas and others, including Mrs. Brownlee, made commitments to buy stock.  Id. at p. 23.  On April 6, 1992, Mr. Lombas agreed to purchased 1,250 shares in AFC for $37,500.  Id. at 25.  He actually purchased 1,750 shares on May 9, 1992 and an additional 600 shares on January 3, 1994 for a total stock investment of at least $49,500.  Id. at 25-31.  Mr. Lombas was AFC's largest shareholder and its president.  Id. at p. 28.

On July 15, 1992, Mr. Lombas lent AFC $100,000.  Id. at pp. 31 and 36.  Mrs. Brownlee lent AFC $52,000.  Exhibit D to Rec. doc. 38.  AFC issued collateral chattel mortgage notes to Mr. Lomas and Mrs. Brownlee.  Id. at p. 37.   Mr. Lombas was not represented by counsel, but it was his understanding from the meeting at Kingman Street that AFC's hard assets (property, building and equipment) secured his loan.  Id. at pp. 38-39.  About a year before his deposition, Mr. Lombas learned that the collateral chattel mortgages were never recorded.  Id. at pp. 39-40.

Mr. Lombas had sought to get out of the investment and the loan in 1998 and 2003.  Id. at pp. 44-45.  Namer told him there was no money to buy him out.  Id. at pp. 44, 45 and 51.  Mr. Lombas was paid interest on the loan until June, 2004.  Id. at pp. 43 and 49.  On January 41, 2005, he made formal demand on the note.  Id. at pp. 41-42.

Mr. Lombas was aware of the 2003 FTC judgment against AFC.  Id. at p. 62.  About two or three weeks before the closing with Miss Lou Properties, Namer convened a shareholder meeting at Kingman Street.  Id. at p. 71-73.  The shareholders discussed what could be done for the creditors, Mr. Lombas and Mrs. Brownlee.  Id. at p. 74.  They decided to sell the St. Tammany Parish property in order to eliminate AFC's debt to Mr. Lombas and Mrs. Brownlee.  Id. at pp. 71 and 77.

Miss Lou Properties submitted an affidavit from Mr. Lombas in which he states that AFC obtained an appraisal of the St. Tammany Parish Property that confirmed that the sale price to Miss Lou Properties was comparable to the appraised price.  Rec. doc. 44 at Exhibit C.  For purposes of this motion for summary judgment, the court will accept that in February 2005 the land with its improvements had a fair market value of $200,000.  The Receiver makes no argument to the contrary.  It is undisputed that prior to the sale to Miss Lou Properties the land was unencumbered. In February 2005, AFC owed the FTC the balance due on the $3 million judgment and $152,000 to Mrs. Brownlee and Mr. Lombas.  AFC was not performing its obligations on the Brownlee/Lombas debt as it had not paid interest since June 2004.  In return for the transfer of the property with a value of $200,000, AFC received $48,000 in cash and Miss Lou Properties assumed the $152,000 in debt owed to Mr. Lombas and Mrs. Brownlee.   In January 2005, AFC's obligations to Mrs. Brownlee and Mr. Lombas were worthless.  Prior to the transfer, their only recourse was to sue AFC.  As general creditors, such a suit would not have given them any rights against the property.  After the transfer they could collect on their notes by suing Miss Lou Properties because the notes, totaling $152,000, were secured by mortgages on property that had a value of $200,000.  AFC gave up an asset with a value of $200,000 and received $48,000.  The assumption by Miss Lou Properties of

$152,000 in worthless debt did not provide AFC with reasonably equivalent value in exchange for the transfer of the property.  The contention of the defendants (other than the Recorder of Mortgages) that the transfer enhanced AFC's financial position defies credibility.

The third requirement for a fraudulent transfer under 28 U.S.C. § 3304(a)(1) is that the debtor was insolvent at the time of the transfer.  "A person is insolvent if the sum of his debts is greater than all of his assets and he is presumed insolvent if he fails to pay his debts as they become due."  United States v. Lombardi, 924 F.Supp. 361, 363 (D. R.I. 1996)(citing 28 U.S.C. § 3302).  It is undisputed that AFC's debts, including the judgment owed to the United States, were greater than all of its assets.  AFC was insolvent at the time of the transfer.        The transfer of the property to Miss Lou Properties was fraudulent under § 3304(a)(1).

## FRAUDULENT TRANSFER UNDER § 3304(a)(2)

It is undisputed that two of the requirements for a fraudulent transfer under § 3304(a)(2) are present:  (1) the debt to the FTC arose before the transfer to Miss Lou Properties; and (2) the debtor, AFC, was insolvent at the time of the transfer.  A necessary prerequisite for the remaining requirements is that the transfer be made to an insider.[6]  The property was sold to Miss Lou Properties.  Neither Miss Lou Properties nor Ben Walker, who owned 100% of Miss Lou Properties, were insiders of AFC.  As part of the transfer, the property was mortgaged to Mrs. Brownlee and Mr. Lombas.  Assuming for the moment that this can be construed as a transfer of the property to them, Mrs. Brownlee and Mr. Lombas were not insiders.  There is no evidence that Mrs. Brownlee

---

[6]  The remaining requirements for a fraudulent transfer under § 3304(a)(2) are:  (1) the transfer was made to an insider for an antecedent debt; and (2) the insider has reasonable cause to believe that the debtor was insolvent.

11

was anything more than a minority shareholder.  While Mr. Lombas was the largest shareholder, he

resigned as president in July 2004.  Lombas at pp. 45-46.[7]  A mere shareholder is not an insider

within the meaning of the FDCPA.  28 U.S.C. § 3305(4)(B).  The transfer of the property to Miss

Lou Properties was not fraudulent under § 3304(a)(2).

FRAUDULENT TRANSFER UNDER § 3304(b)(1)(A)

Pursuant to § 3304(b)(1)(A), the Receiver must demonstrate that AFC made the transfer with

actual intent to defraud the FTC.  The Receiver has produced considerable evidence to support his

contention that Namer acted with intent to defraud the FTC.  This is disputed by the defendants.  It

is not necessary to resolve this issue on the motion for summary judgment since the undisputed facts

demonstrate that the transfer was fraudulent under § 3304(a)(1).

OTHER ISSUES

Inasmuch as the Act of Sale by AFC to Miss Lou Properties was fraudulent, it follows that

the assumption of the obligations of Mrs. Brownlee and Mr. Lombas by AFC, the mortgages granted

by Miss Lou Properties to secure its debt to Mrs. Brownlee and Mr. Lombas, and the lease by Miss

Lou Properties to AFC are all null.

The Receiver submitted the affidavit of Andrew Joffe.  Exhibit F to Rec. doc. 38.  Namer

contends that he hired Mr. Joffe, an attorney, to advise him on the sale of the St. Tammany Parish

property, to prepare the act of sale and to act as the closing attorney.  Namer argues that he did not

---

[7] The Receiver contends that there was a later filing by AFC in which Mr. Lombas was shown as the president. Mr. Lombas contends that his July 2004 resignation letter to the Secretary of State demonstrates that he resigned at that time as president.  For purposes of this motion for summary judgment, the court must accept that Mr. Lombas resigned in July 2004.

waive the attorney-client privilege and Joffe's affidavit should not be considered.[8]  See Namer's affidavit attached to Rec. doc. 44.  Namer acknowledges that AFC paid Mr. Joffe's legal fees.  Id. If the client was AFC, the Receiver, as the successor in interest and akin to a trustee in bankruptcy, was entitled to waive the privilege.  Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, A.B.A., Sec. of Lit. (4th Ed. 2001), pp. 275-85.   Namer has not demonstrated that he consulted Mr. Joffe in his individual capacity as would be necessary for him to establish that he was the client for purposes of the attorney-client privilege.  Id. at pp. 109-10. The defendants contend that Namer, as a fiduciary, set the course of events to protect AFC's shareholders and lenders.  Rec. doc. 38 at p. 7.  This confirms that Namer sought advice from Mr. Joffe in his capacity as AFC's representative.

## RECOMMENDATION

IT IS RECOMMENDED that the motion of the plaintiff, Claude C. Lightfoot, Jr. ("Receiver"), for motion for summary judgment (Rec. doc. 38) be granted and that there be judgment in favor of the Receiver and against Miss Lou Properties, the Recorder of Mortgages, Mrs. Brownlee and Mr. Lombas:

1.   Annulling, revoking and rescinding the Act of Sale and Assumption (Instrument #1478080) entered into by and between AFC and Miss Lou Properties and ordering the Recorder of Mortgages to cancel and erase the inscription of said act from the public records;

---

[8]  It was not necessary to use the affidavit to determine that the transfer was fraudulent under § 3304(a)(1). Because of the time spent by the parties on Mr. Joffe's affidavit, the issue raised by the defendants is addressed.

2.      Declaring null and void the Commercial Lease (Instrument #1478082) and ordering the Recorder of Mortgages to cancel and erase the inscription of said lease from the public records; and

3.      Ordering the Recorder of Mortgages to cancel and erase the inscriptions of the mortgages in favor of Mrs. Brownlee (Instrument #1478084) and Mr. Lombas (Instrument #1478085) as accessory obligations to the Act of Sale and Assumption.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 31st day of August, 2006.

_____
**SALLY SHUSHAN**
**United States Magistrate Judge**